IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY ELWOOD FOGAL, III, | ) Case No. 3:21-cv-34 |
| | ) |
| Plaintiff, | ) JUDGE KIM R. GIBSON |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Title II of the Social Security Act entitles insured persons with disabilities to receive disability insurance benefits ("DIB"). *See* 42 U.S.C. § 423. The present action stems from Administrative Law Judge John A. Fraser's ("the ALJ") denial of an application for DIB by plaintiff Harry Elwood Fogal, III ("Mr. Fogal"), (ECF No. 8-2 at 11–28), which Mr. Fogal has appealed to this Court. (ECF No. 3). Mr. Fogal has moved for summary judgment on this appeal, seeking reversal of his application's denial. (ECF No. 10). The Acting Commissioner of the Social Security Administration ("SSA"), Kilolo Kijakazi ("Commissioner"), opposes Mr. Fogal's appeal on behalf of the SSA and has also moved for summary judgment. (ECF No. 13).[1] Reviewing the ALJ's decision under 42 U.S.C. § 405(g), the Court **AFFIRMS** that decision, **DENIES** Mr. Fogal's motion for summary judgment, and **GRANTS** the Commissioner's motion for summary judgment.

I.   BACKGROUND

---

[1] The ALJ denied Mr. Fogal's DIB application on behalf of the Commissioner, but the Commissioner is also a party seeking to defend the ALJ's (and her own) denial of Mr. Fogal's application on behalf of the SSA. The Court will attempt to minimize any confusion stemming from the Commissioner's dual role by identifying the ALJ as the adjudicator whose findings the Court is currently reviewing, and the Commissioner as the litigant who is defending those findings on appeal.

On or about March 23, 2018, Mr. Fogal was admitted to the Conemaugh Memorial Medical Center after suffering a "cerebrovascular accident"—i.e., a stroke. (ECF No. 8-9 at 18). Mr. Fogal was discharged from this first hospital to a second one—the University of Pittsburgh Medical Center—on March 26, 2018, (*id.* at 53–54), where he remained until his discharge on April 2, 2018. (ECF No. 8-8 at 153). Following his stroke, Mr. Fogal began exhibiting a condition of "left-sided weakness" caused by stroke-related neurological damage, also known as "left hemineglect," (ECF No. 8-7 at 133), as well as severe fatigue. (ECF No. 8-8 at 157–62). On April 11, 2018, Mr. Fogal was referred to occupational therapy by his primary care physician, William Pham, DO ("Dr. Pham"), and he began participating in weekly therapy sessions with Lynn Lightfoot-Garbarino, OTR/L, CLT ("Ms. Lightfoot-Garbarino") to treat his left hemineglect, fatigue, and other post-stroke sequelae. (ECF No. 8-8 at 153–54). After Mr. Fogal underwent a stent implantation on May 30, 2018, (*id.* at 25), he began making noticeable progress in his recovery. (*Id.* at 156). Mr. Fogal continued exhibiting "[g]radual improvement" in his therapy sessions with Ms. Lightfoot-Garbarino throughout the summer of 2018, (*see id.* at 164), and he was "released to go back to work with no restrictions" on August 14, 2018. (*Id.* at 165). On September 18, 2018, Mr. Fogal was discharged from occupational therapy based on the progress of his recovery. (*Id.* at 166).

On November 29, 2018, Mr. Fogal applied for DIB under Title II of the Social Security Act, initially claiming a disability onset date of February 2, 2018. (ECF No. 8-2 at 14; ECF No. 8-5 at 1–5).[2] (He later amended this date to March 25, 2018). (ECF No. 11 at 15). On April 15, 2019, an

---

[2] The Court notes that Mr. Fogal was represented by legal counsel throughout his DIB application process. On November 28, 2018, Mr. Fogal engaged the attorneys of Berger & Green P.C. to "represent [him] in [his] claim for Disability Benefits under the Social Security Act." (ECF No. 8-4 at 2). (*See also id.* at 4) (form dated November 28, 2018, engaging Cynthia C. Berger of Berger & Green to represent Mr. Fogal before the SSA).

SSA Disability Examiner found that Mr. Fogal was not disabled and denied his application. (ECF No. 8-3 at 14; ECF No. 8-4 at 6–10). On April 17, 2019, Mr. Fogal submitted a Disability Appeal, requesting a hearing before an Administrative Law Judge. (ECF No. 8-4 at 11).[3] On May 7, 2020, the ALJ held a telephonic hearing on Mr. Fogal's appeal. (ECF No. 8-2 at 34–55). On May 29, 2020, the ALJ issued a decision finding that Mr. Fogal was not disabled. (ECF No. 8-2 at 14–28). On June 29, 2020, Mr. Fogal submitted a request for review of the ALJ's decision by the SSA Appeals Council. (ECF No. 8-4 at 100–01). The Appeals Council denied this request for review on January 13, 2021. (ECF No. 8-2 at 2–8).

On March 8, 2021, Mr. Fogal filed a complaint with this Court, appealing the ALJ's denial of his DIB application under 42 U.S.C. § 405(g). (ECF No. 3). Both parties have filed motions for summary judgment and supporting briefs. (ECF Nos. 10–11, 13–14).

## II.   LEGAL STANDARD

When reviewing an ALJ's denial of DIB, the Court must base its review on the record of the administrative proceedings and the pleadings of the parties. 42 U.S.C. § 405(g). The Court's review of legal issues is plenary, but its review of factual findings is limited. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The Court must determine whether the ALJ applied the proper legal standards in making his decision, and whether the record contains substantial

---

On February 26, 2020, Mr. Fogal appointed William J. Remaley of Berger & Green as an additional representative. (*Id.* at 62).

[3] On April 29, 2019, Mr. Fogal mailed a notice of his objection to a telephonic hearing and requested that his hearing before the ALJ be conducted in-person. (ECF No. 8-4 at 37). On February 21, 2020, the SSA scheduled a hearing before the ALJ to be held in-person on May 7, 2020. (*Id.* at 39–45). On April 17, 2020, Mr. Fogal requested that this hearing be converted back to a telephonic hearing. (*Id.* at 66). On April 20, 2020, the SSA sent Mr. Fogal an Amended Notice of Hearing informing him that his hearing on May 7, 2020, would be held telephonically. (*Id.* at 67–71).

evidence supporting the ALJ's factual findings.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

With respect to the Court's review of legal issues, the Court must "review the ALJ's application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).  The proper legal standard for assessing disability is a five-step sequential evaluation process that considers whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or medically equals the requirements of an impairment listed in the regulations and is considered per se disabling, (4) can return to his past relevant work, and (5) if not, whether he can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4).  *See also Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014).

With respect to the Court's review of factual findings, the claimant must show at Steps One through Four that the ALJ's decision was not based on "substantial evidence."  42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  (The burden of proof shifts to the Commissioner at Step Five).  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). This evidentiary burden is more than a mere scintilla, but less than a preponderance of the evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  If the ALJ's factual findings were reached according to the correct legal standards and are supported by substantial evidence, the Court is bound by them, "even if [it] would have decided the factual inquiry differently." *Fargnoli*, 247 F.3d at 38.

### III.     DISCUSSION

Having reviewed the relevant materials—i.e., the evidentiary record, the ALJ's decision, the parties' motions for summary judgment, and their briefs in support thereof—the Court finds that the ALJ applied the correct legal standard and determined that Mr. Fogal was not entitled to DIB based on factual findings supported by substantial evidence. Mr. Fogal levels five arguments against the ALJ's decision, all of which essentially relate to the ALJ's choice not to rely on an assessment of Mr. Fogal conducted by Dr. Pham on December 21, 2018. Given that this assessment is the primary piece of record evidence supporting Mr. Fogal's DIB application, it comes as no surprise that the ALJ's choice to disregard this assessment is Mr. Fogal's target on appeal. For the reasons offered below, the Court finds that the ALJ did not err in disregarding Dr. Pham's assessment, and this finding leads the Court to reject Mr. Fogal's remaining arguments.

### a. The ALJ did not err in disregarding Dr. Pham's December 2018 assessment

Mr. Fogal argues that the ALJ erred "by mischaracterizing the findings and opinions of Dr. William Pham, treating primary care physician, in determining invalid reasons (supportability and consistency) for the ALJ's not persuasive determination in derogation of the Commissioner's regulations 20 C.F.R. § 404.1520c." (ECF No. 11 at 3). At issue here is an assessment by Dr. Pham from December 21, 2018, finding that Mr. Fogal was still exhibiting significant impairment of his functional capacity at that time. (ECF No. 8-9 at 179–80). Although this assessment captures Mr. Fogal's condition at a single point in time, Mr. Fogal asserts that it is evidence of his impairment "for a continuous period of time following his brain stroke on March 25, 2018[,] through June 14, 2019." (ECF No. 11 at 15). Mr. Fogal's impairment was a

5

combination of (a) "significant" or "marked" left hemineglect, (b) severe fatigue, and (c) other post-stroke cognitive impairment. (*Id.* at 15–16). Although the record seems to suggest that Mr. Fogal recovered from these various impairments at different points in time, the thrust of his argument is that some combination of these impairments left him unable to work for nearly fourteen months. For simplicity's sake, the Court will refer to the collective effect of these impairments as Mr. Fogal's "alleged disability."

Mr. Fogal seeks DIB for the period of time between March 25, 2018, and June 14, 2019, but he need not have been disabled for that length of time in order to receive DIB. Under the Social Security Act, a claimant is not "disabled" unless he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Based on an onset date of March 25, 2018, Mr. Fogal would have to show that he was continuously incapable of working until at least March 25, 2019, to be entitled to any sum of DIB.[4] Accordingly, evidence relevant to the Court's review is that reflecting whether Mr. Fogal's impairments left him incapable of working until at least March 25, 2019.

As noted, the primary evidence supporting Mr. Fogal's alleged disability is Dr. Pham's December 2018 assessment. (ECF No. 8-2 at 23). In this assessment, Dr. Pham wrote that Mr. Fogal had been "only able to tolerate 2 hours of work before feeling excessively fatigued[,]" (*id.* at 179); was "[s]till having significant left hemi-neglect on exam" that was "grossly unchanged over the past two visits[,]" (ECF No. 8-9 at 180); and still had "some cognitive impairment that

---

[4] This is the minimum that Mr. Fogal must demonstrate; he could, of course, be entitled to a greater sum of DIB if he established a disability extending beyond March 25, 2019.

6

may now be permanent as he has some delay with processing complex tasks." (*Id.* at 179). Mr. Fogal maintains that he "was still under Dr. Pham's marked left hemineglect limitations" until at least June 14, 2019. (ECF No. 11 at 15). Although he does not expressly claim that this hemineglect and the other impairments collectively rendered him incapable of working through March 2019, this is the necessary implication of his assertion that "Dr. Pham's report of December 21, 2018, opining [that Mr. Fogal] experiences fatigue and requires rest periods during the day along with his significant marked left hemineglect, *requires a finding of disability*." (*Id.* at 15–16) (emphasis added).

However, medical assessments from March 2019 indicate that Mr. Fogal had largely recovered from his impairments by that time. On March 21, 2019, Dr. Joseph Tavares found in a consultative evaluation that, although Mr. Fogal "still has some weakness on his left side[,]" he was generally "doing well" in terms of strength and mobility. (ECF No. 8-9 at 128, 131). Specifically, Dr. Tavares found that Mr. Fogal had a normal gait, could walk on his heels and toes without difficulty, could perform a full squat, could stand normally without the use of assistive devices, needed no help changing for the examination or getting on and off the exam table, and was able to easily rise from his chair. (*Id.* at 130). He also found that Mr. Fogal had "[h]and and finger dexterity intact," was "able to button, zip and tie[,]" and had a 4/5 left-handed grip strength (compared to his 5/5 right-handed grip strength). (*Id.* at 131).

On the same date, Mr. Fogal underwent a "Mental Status Evaluation" with Gina Lombardi, M.A. (ECF No. 8-9 at 145). Ms. Lombardi, a psychologist, found that Mr. Fogal had intact attention and concentration, and that was he generally able to function normally in his daily life.

7

> He is able to dress, bathe, and groom himself. He does do laundry occasionally. He will go shopping with his girlfriend. He cooks, cleans, manages his money, and does not drive. . . . Hobbies and interests are golf, and he spends most of his time watching TV, or doing things around the house that he is able to do.

(*Id.* at 147).

The ALJ understood the assessments of Dr. Tavares and Ms. Lombardi (along with other pieces of medical evidence cited in the ALJ's decision) to be "inconsistent with [Mr. Fogal's] alleged limitations" with regard to the "intensity, persistence, and limiting effects" of Mr. Fogal's impairments. The ALJ considered Dr. Pham's assessment but found it

> not persuasive due to overstatements and because both opinions are based on a fictional [sic] of a need for limitations for the right hand and arm. Nothing in the record shows difficulties using the right hand and arm. These opinions attribute the claimant's right sided limitations to the claimant's left side hemiparesis, which leaves [his] right sided limitations unsupported. Further, Dr. Pham's limitations on the right hand and arm are flatly contradicted by his treatment notes. Records from July 2018 forward show the only residual effect of the stroke is some left handed weakness and limits on manipulation (handling and fingering) on the left.

(ECF No. 8-2 at 26). In addition, the ALJ found Dr. Pham's assessment that Mr. Fogal was still suffering from "extreme mental health limitations" in December 2018 to be similarly "not persuasive due to the detailed findings of [the other] neurologists and associated studies . . . ." (*Id.*). The ALJ consequently disregarded Dr. Pham's December 2018 assessment in his analysis and ultimately concluded that Mr. Fogal's "impairments and restrictions . . . would not prevent [him] from performing" unskilled, light-level work. (*Id.*).

Mr. Fogal disputes the propriety of the ALJ's choice to disregard Dr. Pham's December 2018 assessment, but he leaves somewhat unclear the precise basis of his opposition. He asserts at one point that the ALJ "mischaracteriz[ed] the findings and opinions of Dr. William Pham . . . in determining invalid reasons (supportability and consistency) for the ALJ's not persuasive

8

determination . . . ." (ECF No. 11 at 3). Elsewhere, however, he asserts that the ALJ altogether failed to factor Dr. Pham's assessment into his analysis. (*Id.* at 17) ("The ALJ's lack of analysis of Plaintiff's marked left hemineglect disorder by Dr. William Pham . . . violates the ALJ's duty to analyze all medical evidence."). Still elsewhere, Mr. Fogal asserts that "[t]here is no contrary medical evidence that the ALJ accepted to rebut Dr. Pham's treating physician findings of [Mr. Fogal's] marked left hemineglect condition[,]" while also recognizing that "[t]he opinion of the treating physician is entitled to more weight than that of a one-time consultative examiner, a medical advisor or other non-examining physician." (*Id.* at 16–17). Mr. Fogal appears to be arguing that Dr. Pham's assessment is an "acceptable medical source," (*id.* at 17), while the assessments of Dr. Tavares and Ms. Lombardi are not, and that it was therefore improper for the ALJ to credit the latter over the former (if, indeed, it was proper to consider the latter as medical evidence at all). (*See id.* at 16).

If Mr. Fogal is indeed arguing that the assessments of Dr. Tavares and Ms. Lombardi are not "acceptable medical sources" that the ALJ could weigh against Dr. Pham's assessment, this argument would be unavailing. Although the assessment of a primary treating physician receives a degree of deference, at least insofar as it reflects "expert judgment based on a continuing observation of the patient's condition over a prolonged period of time[,]" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), the assessments of doctors more tangentially related to the patient's treatment can still serve as acceptable forms of medical evidence. *See id.* (noting that an ALJ can base his decision on the opinion of "a non-treating, non-examining physician"). ALJs may also consider the opinions of psychologists like Ms. Lombardi and weigh their credibility against that of medical doctors. *See Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 119 (3d

9

Cir. 2012). It was not merely permissible for the ALJ to consider both of these assessments; as Mr. Fogal acknowledges, the ALJ has an affirmative duty to analyze all medical evidence in the record. (ECF No. 11 at 17) (citing *Reefer v. Barnhart*, 326 F.3d 376, 381–82 (3d Cir. 2001)).

When faced with conflicting evidence, ALJs must make factual findings about credibility that, like any other factual findings, must be supported by substantial evidence. *Ejiofor v. Attorney Gen. of U.S.*, 408 F. App'x 588, 588 (3d Cir. 2010). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ must consider all the evidence and give some reason for discounting the evidence he rejects. *Id.* So long as an adverse credibility finding is supported by "sufficient, cogent reasons[,]" the Court will afford this finding "substantial deference[.]" *Butt v. Gonzales*, 429 F.3d 430, 434 (3d Cir. 2005). In other words, its credibility findings must be supported by substantial evidence. *Ejiofor*, 408 F. App'x at 588.

Here, the assessments of Dr. Tavares and Ms. Lombardi provide "sufficient, cogent reasons" for the ALJ's determination that Dr. Pham's December 2018 assessment was not credible. *Butt*, 429 F.3d at 433. Affording this determination "substantial deference[,]" *Ejiofor*, 408 F. App'x at 588, the Court finds no error in the ALJ's subsequent choice to disregard Dr. Pham's assessment.

### b. The ALJ did not err in his wording of his hypothetical questions to the vocational expert

As noted, each of Mr. Fogal's remaining challenges to the ALJ's decision are premised on his position that the ALJ erroneously declined to base his decision on Dr. Pham's December 2018

10

assessment. The first of these challenges is Mr. Fogal's argument that the ALJ "erred in his hypothetical questions to the vocational expert by failing to include any limitations from Plaintiff's marked left hemineglect, i.e., unaware of objects to Plaintiff's left side, due to sequela from Plaintiff's brain stroke." (ECF No. 11 at 3). At issue is the following hypothetical posed by the ALJ to a vocational expert:

> Please assume a hypothetical individual of the Claimant's age, education, and job background. Further assume that this hypothetical individual is able to work at the light exertional level. This person is able occasionally to climb ladders and scaffolds, to kneel and to crawl. This person is able frequently to climb ramps and stairs, to balance, stoop, and crouch. On the left side, in other words, with the left hand, this person is able occasionally to reach, handle, finger, and feel. This person is able to tolerate occasional exposure to unprotected heights, moving machinery, humidity, extreme cold, and vibrations. This person is right-hand dominant . . . . Is this hypothetical individual able to perform the past relevant work as a construction laborer?

(ECF No. 8-2 at 51–52). The vocational expert responded, "No." (*Id.* at 52). The ALJ then asked the vocational expert whether the person described in this hypothetical would be able to perform past work as a construction laborer on a limited six-hour workday. (*Id.* at 53). The vocational expert again responded, "No[,]" but added that such a person could perform unskilled, light-level work, such as the work of a conveyor-line worker or a machine tender. (*Id.* at 52–53).

Mr. Fogal argues that "a remand is required if the ALJ determines in a decision that a functional limitation exists if that limitation was not included in the hypothetical question to the vocational expert." (ECF No. 11 at 16) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)). He further argues that "the vocational expert should have considered Plaintiff's failure to be aware of objects to his left from his marked left hemineglect[,]" and that, because the ALJ's questioning did not feature a hypothetical individual suffering from this impairment, this

11

questioning did not "accurately portray the claimant's impairments" or allow the vocational expert "the opportunity to evaluate those impairments as contained in the record." (*Id.*).

Notwithstanding Mr. Fogal's assertion that the ALJ "did not submit [his] brain stroke sequela of left sided hemineglect to the vocational expert for his consideration[,]" (ECF No. 11 at 15), what he is actually challenging here is the ALJ's decision not to submit evidence of *marked* left hemineglect to the vocational expert. After all, the ALJ's hypothetical individual—who only "occasionally" is able "to reach, handle, finger, and feel" on his left side—evidently suffered from some degree of hemineglect. (ECF No. 8-2 at 51–52). Mr. Fogal insists that "the vocational expert should have considered [his] *marked* left hemineglect[,]" as the condition was described in "Dr. Pham's treating physician findings[.]"  (ECF No. 11 at 16) (emphasis added).  He argues, in other words, that the ALJ should have described a hypothetical individual to the vocational expert who was suffering from the impairments attributed to him by Dr. Pham in the December 2018 assessment.

To determine whether the ALJ worded his hypothetical improperly, the Court must determine whether the impairments described by Mr. Fogal are both medically established and supported by the record, since hypothetical questions may only describe impairments with both characteristics. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). An ALJ posing hypotheticals is not required "to submit to the vocational expert every impairment *alleged* by a claimant." *Id.* (emphasis original). Rather, "the hypotheticals posed must accurately portray the claimant's impairments" and give the vocational expert "an opportunity to evaluate those impairments as contained in the record" that constitute *"credibly established limitations." Id.* (emphasis original). Generally, a limitation is "credibly established" when "medically supported

12

and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554.  However, limitations that are medically supported but contradicted by other evidence "may or may not be found credible[.]"  *Id.*  In such circumstances, the decision to accept or reject a limitation is left to the ALJ's discretion, and the Court will "not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 615–16 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 554).

The Court found in Section III.a that the ALJ did not err in finding Dr. Pham's December 2018 assessment incredible.  Based on this finding, the Court further finds that the ALJ did not err in concluding that the limitations described in this assessment were not "credibly established" and declining to factor those limitations into his hypothetical.

### c. The ALJ did not err in determining that Mr. Fogal was capable of performing a reduced range of unskilled, light-level work

Mr. Fogal challenges the ALJ's determination at Step Five that he "has the capability to perform unskilled light occupations with an SVP of two as conveyor line worker DOT #524.687-022, machine tender DOT #569.686-046 and conveyor tender DOT #921.685-046." (ECF No. 11 at 11) (citing ECF No. 8-2 at 27–28).  According to Mr. Fogal, "Dr. Pham's report of December 21, 2018[,] opining [that he] experiences fatigue and requires rest periods during the day along with his significant marked left hemineglect, requires a finding of disability." (*Id.* at 15–16).  "Surely[,]" he reasons, "[my] inability to be aware of objects to [my] left in the workplace is a significant functional limitation, which would preclude work performance." (*Id.*).

Because the ALJ did not err in disregarding Dr. Pham's December 2018 assessment, he also did not err in disregarding the functional limitations described therein.  As for the medical evidence that the ALJ did consider, this evidence provides a substantial basis for concluding that

13

Mr. Fogal was capable of performing unskilled, light-level work earlier than March 25, 2019. Therefore, the Court finds that the ALJ did not err in making such a finding.

### d. The ALJ did not err in finding that Mr. Fogal was not disabled for a continuous closed period of time from March 25, 2018, to June 14, 2019

Mr. Fogal maintains that was unable to engage in substantial gainful activity from his disability onset date of March 25, 2018, until June 14, 2019, when Dr. Pham noted his "markedly decreased left hemineglect[.]" (ECF No. 11 at 15). The evidence discussed above was sufficient to support the ALJ's conclusion that Mr. Fogal was able to perform unskilled, light-level work within twelve months of his disability onset date. Accordingly, the Court finds that the ALJ did not err in finding that Mr. Fogal was not, in fact, continuously disabled from March 25, 2018, to June 14, 2019.

### e. The ALJ's decision was based on substantial evidence

Lastly, Mr. Fogal argues that the ALJ's decision "is not based on substantial evidence." (ECF No. 11 at 3). This conclusory argument, provided without additional support or explanation, is clearly insufficient to satisfy the burden of proof that Mr. Fogal bears at each step of the ALJ's analysis except Step Five. *Hess*, 931 F.3d at 201. As for Step Five, the Court found in Section III.c, *supra*, that the ALJ's factual finding at that step was indeed supported by substantial evidence. Therefore, the Court rejects this argument as well.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY ELWOOD FOGAL, III, | ) | Case No. 3:21-cv-34 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 5th day of June, 2023, upon consideration of Plaintiff's request for Judicial Review pursuant to 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** that the decision of the ALJ is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Mr. Fogal's motion for summary judgment at ECF No. 10 is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment at ECF No. 13 is **GRANTED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE